**In re John COOPER, Betty Cooper, J.G. Cooper Enterprises, Inc., and Austram Enterprises, Inc., all t/a Oyster Bay Restaurant, Debtors.**

**Bankruptcy No. 88–05935.**

United States Bankruptcy Court,
D. New Jersey.

Dec. 4, 1992.

Robert B. Wasserman, Lehman, Wasserman, Jurista & Stolz, Millburn, N.J., for the Trustee.

Robert Saal, U.S. Atty., Newark, N.J. and Josh Eagle, U.S. Dept. of Justice, Tax Div., Washington, D.C., for the U.S.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by Angelo J. Lobosco, trustee in this case, for an order reducing and reclassifying certain claims filed by the United States of America, Internal Revenue Service ("United States" or "IRS"). The court has jurisdiction under 28 U.S.C. §§ 1334(b) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). This shall constitute the court's findings of fact and conclusions of law. For the reasons which follow, the motion is granted in part and denied in part.

## FACTS

On September 8, 1988, John and Betty Cooper ("the Coopers"), husband and wife, filed a petition for reorganization under chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code"). An order was signed on May 10, 1989 directing the appointment of a trustee, and Mr. Lobosco was appointed. He then operated the Coopers' business, known as Oyster Bay Restaurant.

When the Coopers purchased Oyster Bay Restaurant in 1986 they formed two corporations, J.G. Cooper Enterprises, Inc. ("J.G. Cooper") and Austram Enterprises, Inc. ("Austram"), and transferred title to the business's assets to the corporations. The trustee determined, however, that the corporations were alter egos of the Coopers. The trustee therefore moved for an order extending the Coopers' case to include J.G. Cooper and Austram, and to substantively consolidate the estates. That motion was granted by order of January 9, 1990. The case was subsequently converted to chapter 7.

The remaining asset of the consolidated estates is a fund of $100,701.22 which is proceeds of a sale of a liquor license held in the name of J.G. Cooper.[1] The trustee is preparing to distribute the fund to creditors. No creditor other than the IRS claims a lien on the fund. If the trustee's motion is denied, the IRS will be entitled to the entire fund, subject to claims under Code § 506(c).

The IRS had filed a proof of claim on October 19, 1988 for income taxes and interest due from the Coopers in the amount of $266,983.26, which was asserted to have priority under Code § 507(a)(7). The proof of claim also included a penalty claim of $18,688.62 as a general unsecured claim.

On January 24, 1990, which was after the motion for extension and substantive consolidation was granted but before the time to file claims had expired, the IRS filed an amended proof of claim for income taxes, interest and penalties due from the Coopers in the amount of $285,671.56. The amended proof of claim reclassifies those taxes from a priority claim to a secured claim based on federal tax liens which were filed in 1985 but were overlooked when the original proof of claim was filed. The amended proof of claim also asserted a claim for FUTA taxes and interest of $4,681.92 as a priority claim.

The trustee has moved to reclassify the alleged secured claim as a general unsecured claim of $266,983.02 and a subordinated claim under Code § 726(a)(4) of $19,089.10. The trustee makes several arguments in support of his motion. First, the trustee argues that no part of the fund is proceeds of sale of any property of the Coopers, against whom the IRS filed the tax lien. Code § 506(a) provides that a claim is secured only to the extent of the value of the bankruptcy estate's interest in property subject to the lien. Since one of the corporate entities held title to the liquor license when the Coopers' bankruptcy petition was filed, the trustee argues that the IRS's lien is void under Code § 506(a) and (d) because it was not a lien on property of

the Cooper's estate. The trustee's second argument is that the IRS's claim for income taxes and interest is not entitled to priority under Code § 507(a)(7), and is a general unsecured claim. The trustee's third argument is that the IRS's lien for penalties is voidable under Code § 724(a), and the claim for penalties is subordinate to other unsecured claims under Code § 726(a)(4). The trustee's fourth argument is that substantive consolidation of the estates did not extend the IRS's lien to property of the corporation because such an extension would violate the automatic stay of Code § 362(a).

The IRS concedes that its lien may be avoided to the extent that it secures penalty claims, and that its penalty claim must be classified under Code § 726(a)(4). In opposing the balance of the trustee's motion to avoid its lien, the IRS makes two arguments. First, the IRS argues that substantive consolidation created one estate, and that its lien for income taxes, FUTA taxes and interest extends to all property of the consolidated estate. Alternatively, the IRS argues that the corporations were alter egos of the Coopers, and the tax lien therefore attached to the property of the corporations before the Coopers' bankruptcy petition was filed. The IRS did not reply to the trustee's arguments that the income taxes and interest are not entitled to priority under Code § 507(a)(7), and that Code § 362(a) prevents extension of the tax lien pursuant to the substantive consolidation.

## CONCLUSIONS OF LAW

### I.

The bankruptcy court is a court of equity with power to disregard the corporate form where appropriate. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). It has been held as a corollary in a long line of cases that the bankruptcy court can order substantive consolidation of related estates in the exercise of its equitable powers. *See e.g., In re Au-*

---

1. The record on this motion did not reflect the amount or source of this fund. However, the

parties stipulated these facts in telephone conferences after the court reserved decision.

*gie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir.1988) and *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 837 (Bankr. C.D.Cal.1988), *aff'd.*, 949 F.2d 1058 (9th Cir.1991). Substantive consolidation is the merger of the assets and liabilities of two or more estates, creating a common fund of assets and a single body of creditors. *In re Parkway Calabasas, Ltd.*, 89 B.R. at 837. It is different from joint administration, in which *inter alia* all docketing and noticing is done in one case file for more than one related case, but the estates and creditor bodies are not merged. *Id.* at 836. The purpose of joint administration is to make case administration easier and less expensive than in separate cases without affecting the substantive rights of creditors. *Id. See also Matter of Steury*, 94 B.R. 553 (Bankr.N.D.Ind.1988). By contrast, the purpose of substantive consolidation is to ensure equitable treatment of all creditors. *See Augie/Restivo Baking Co., Ltd.*, 860 F.2d at 518.

■ The courts consider a number of factors in determining whether substantive consolidation is warranted. *Id.* However, no set of elements automatically mandates substantive consolidation. *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr. D.Mass.1982). The factors in question are only sign posts to assist the court's judgment. *Steury*, 94 B.R. at 554. The evidence in support of consolidation must prove more than unity of interest or intermingling of funds; it must show *inter alia* that harm has resulted therefrom, or that harm will result from a lack of consolidation. *Snider Bros., Inc.*, 18 B.R. at 238. The court is ultimately weighing the economic prejudice of continued debtor separateness versus the economic prejudice of substantive consolidation. *Id.* at 234.

## II.

■ Where substantive consolidation is warranted, it does not necessarily have to be unlimited. *First Nat'l Bank of El Dorado v. Giller*, 962 F.2d 796 (8th Cir.1992). It has been specifically provided in several cases that improvement in the position of secured creditors would not be permitted in the substantive consolidations in question. *In re F.A. Potts and Co., Inc.*, 23 B.R. 575 (Bankr.E.D.Pa.1982); *In re Food Fair, Inc.*, 10 B.R. 123 (Bankr.S.D.N.Y.1981). The court can consolidate estates as to unsecured claims without consolidating as to secured claims; a secured creditor with a consensual lien is only entitled to such collateral as it bargained for. *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1001 (2d Cir.1975), *cert. denied sub nom. James Walcott, Inc. v. Wharton*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976).

## III.

Where, however, substantive consolidation is unlimited, it has been held that the involuntary tax lien of the United States is extended to all assets of the consolidated estates. *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir. 1966); *Continental Vending Machine Corp.*, 517 F.2d at 997.

■ *Chemical Bank New York Trust Company v. Kheel* is on point and is persuasive here. The trustee essentially seeks a modification or partial revocation of the order of substantive consolidation, which relief was denied to the applicant in *In re Parkway Calabasas, Ltd., supra.* There may be cases in which such modification is warranted, such as, for example, where a secured creditor will receive a windfall otherwise. In such cases, an appropriate motion can be made under Fed.R.Bankr.P. 9024. In this case, however, the IRS is not the holder of a consensual lien which should be limited to the collateral for which it bargained. The IRS holds an involuntary tax lien, the nature of which is to attach both to all presently owned and to all subsequently acquired property of a debtor.

■ Moreover, the trustee argued on the motion for substantive consolidation that the corporations were mere alter egos of the Coopers. If that is so, then that is an alternative reason why the IRS's lien extends to the property of the Coopers held in the name of the corporations. *G.M. Leasing Corp. et al. v. United States, et al.*,

429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). While there are grounds for substantive consolidation other than that one entity is the alter ego of the other, the doctrine of judicial estoppel now bars the trustee from denying an alter ego relationship here. *See In re Oneida Motor Freight Co.*, 848 F.2d 414, 419–20 (3d Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). *See also Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598–99 (6th Cir.1982); *In re Metro Communications, Inc.*, 115 B.R. 849, 855–56 (Bankr.W.D.Pa.1990). Since this court has previously determined on the trustee's motion that the property of the corporations really belonged to the Coopers, it follows inexorably that a tax lien against the Coopers extends to their property held in the name of the corporations.

 The prior owners of the Oyster Bay Restaurant wanted a lien on the liquor license to secure the balance due from the Coopers on the purchase price. The trustee argued in support of the motion for substantive consolidation that the Coopers placed the title to the liquor license in the name of J.G. Cooper as a device to subvert New Jersey law to the effect that a liquor license cannot be liened. The Coopers' shares of stock in J.G. Cooper were then pledged to the prior owners. While it is true that a liquor license is not subject to most liens under New Jersey law, the one exception is for federal tax liens. *The Boss Co., Inc. v. Bd. of Comm'rs of Atlantic City*, 40 N.J. 379, 387, 192 A.2d 584 (1963). Therefore, extending the tax lien to the proceeds of sale of the license puts the IRS in the same position it would have been in if the Coopers had not put the license in the name of J.G. Cooper to subvert New Jersey law. In this manner a harm to the United States is remedied and the unsecured creditors are no worse off than they would have been without the subterfuge, since none of them have been shown to have relied on the separateness of the Coopers and J.G. Cooper.

### IV.

 In considering this motion it became apparent that there is a substantial overlap between the grounds for and remedies of piercing the corporate veil and substantive consolidation. When the trustee moved for substantive consolidation, he relied primarily on the argument that the corporations were alter egos of the Coopers. An alter ego relationship ordinarily weighs heavily in favor of both piercing the corporate veil and substantive consolidation. It is appropriate to note, however, that there are material differences between the doctrines as well. *See* Comment, *Substantive Consolidation in Bankruptcy: A Primer*, 43 Vand.L.Rev. 207, 218 (1990). As previously noted, substantive consolidation is a remedy employed by bankruptcy courts under which the assets and liabilities of related entities are merged to correct prior harm or prevent future harm to creditors. By contrast, piercing the corporate veil is a remedy employed under nonbankruptcy law to remedy fraud or other injustice. State law ordinarily determines when the corporate veil can be pierced. *See e.g., DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 684 (4th Cir.1976). *See also State of New Jersey, Dept. of Envtl. Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150 (1983) and *Matter of Velis*, 123 B.R. 497, 509 (D.N.J.1991), *aff'd in part and rev'd in part on other grounds*, 949 F.2d 78 (3d Cir.1991) for New Jersey law on the doctrine. Where, however, the rights of the United States under federal programs such as Medicare are involved, federal law provides the standards for piercing the corporate veil. *United States v. Pisani*, 646 F.2d 83 (3d Cir.1981).

 The criteria for piercing the corporate veil under nonbankruptcy law are generally that (1) the shareholders disregarded the corporate entity and made it a mere instrumentality for their own affairs, (2) there is such a unity of interest and ownership that the owners and the corporation have no separate existence, and (3) upholding the corporate veil would protect fraud or promote other injustice. *See e.g., Velis*, 123 B.R. at 509.

By contrast, the factors which the courts consider regarding substantive consolidation include (1) the presence or absence of consolidated financial statements, (2) unity of interest and ownership, (3) existence of parent and intercorporate guarantees on loans, (4) degree of difficulty in segregating and ascertaining individual assets and liabilities, (5) existence of transfers of assets without observance of corporate formalities, and (6) commingling of assets. *In re Orfa Corp. of Philadelphia*, 129 B.R. 404, 414–15 (Bankr.E.D.Pa.1991). As previously noted, the ultimate question on substantive consolidation is whether the economic benefits to creditors outweigh any detriments to them. *F.A. Potts & Co.*, 23 B.R. at 572.

Comparison of these factors reveals that the factors which the bankruptcy courts consider regarding substantive consolidation include the factors which courts consider regarding piercing the corporate veil, but there are additional factors which bear on substantive consolidation. This is undoubtedly in part because applications to pierce the corporate veil are typically two- or three-party disputes brought by one creditor against one or two debtors, whereas applications for substantive consolidation require the bankruptcy courts to consider the interests of numerous parties including all creditors. Substantive consolidation is more extensive relief than piercing the corporate veil, because substantive consolidation is a complete merger of legal entities, while piercing the corporate veil is essentially a limited merger for the benefit of only one creditor or group of creditors.

It is safe to infer, however, that where the owners of a corporation have ignored the corporate form, courts of equity will be inclined to do so as well under both doctrines. One material difference is that for purposes of substantive consolidation the bankruptcy courts must also consider whether any creditors have relied on the corporate form or corporate separateness, whereas other courts are not typically required to consider the interests of creditors other than the plaintiffs for purposes of piercing the corporate veil.

In this case, the corporate veil of J.G. Cooper and Austram would be disregarded under either doctrine based on the trustee's proofs on the motion for substantive consolidation.

### V.

As previously noted, one of the trustee's arguments is that the income taxes and interest do not meet the criteria for classification as a priority claim under Code § 507(a)(7), and must therefore be classified as unsecured. Since, however, the claim of the United States against the fund is secured by a tax lien, its classification if it were unsecured is irrelevant.

### VI.

The trustee also argued that extending the lien through substantive consolidation violates the automatic stay of Code § 362(a). That argument has no merit. The automatic stay does not apply to actions which the bankruptcy court takes in administering a bankruptcy case in the proper exercise of its jurisdiction; it applies to certain actions taken outside of the bankruptcy court without its permission. *See* Code § 362(a)–(d).

### VII.

Since the IRS concedes that the lien securing the penalty portion of its claim can be avoided under Code § 724(a) and classified under Code § 726(a)(4), the trustee's motion is granted to that extent. The balance of the trustee's motion is denied for the reasons set forth above. The attorney for the IRS is to submit an order within fifteen days on notice under Rule 4 of the Local Rules of Bankruptcy Practice.