### In re CENTURY ELECTRONICS MANUFACTURING, INC., et al., Debtors.

### David M. Nickless, Trustee, Plaintiff,

### v.

### Avnet, Inc., Defendant.

### Bankruptcy Nos. 01–40153–JBR to 01–40156–JBR. Adversary No. 02–4379.

United States Bankruptcy Court, D. Massachusetts.

June 9, 2004.

David M. Nickless, Karen A. Meyer, Nickless and Phillips, Fitchburg, MA, for David M. Nickless, Trustee, Plaintiff.

Stephen C. Hunt, Adorno and Yoss PA, Ft. Lauderdale, FL, Leonard M. Krulewich, Krulewich Casher, PC, Boston, MA, for Avnet, Inc., Defendant.

## MEMORANDUM OF DECISION ON MOTION IN LIMINE [# 34]

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on the Defendant's "Motion *In Limine* and Pursuant to 11 U.S.C. § 105(a) Determining the Scope of the Court's January 23,

2003[sic] [1] Order Confirming First Amended Liquidating Plan of the Official Committee of Unsecured Creditors as to the Substantive Consolidation of the Debtor Entities for the Purpose of the Within Adversary Proceeding" [# 34] ("Motion *in Limine*") and the Trustee's Opposition thereto [# 46]. The sole issue is whether the confirmation order's provision substantively consolidating the Debtors' estates permits the Defendant to assert a consolidated new value defense in this preference action.

## BACKGROUND

On January 9, 2001 ("Petition Date") the Debtors [2] each filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. Shortly thereafter the Court entered an order permitting the joint administration of the cases; the cases were not substantively consolidated at that time. Subsequently the Creditors' Committee sought the appointment of a Chapter 11 trustee and David Nickless ("Trustee") was appointed. On September 25, 2002 the Creditors' Committee filed the "First Amended Liquidating Chapter 11 Plan of Reorganization" ("Plan") which called for the substantive consolidation of the Debtors' estates. The Trustee objected to confirmation of the Plan solely because of the substantive consolidation provision. On January 28, 2003 the Court confirmed the Plan over the Trustee's objection because the assets and liabilities were so intertwined that unraveling them would be nearly impossible and costly.

The Confirmation Order provides in relevant part:

In accordance with the First Amended Plan, all remaining assets, all liabilities and the estates of the four Debtors are consolidated into a single estate. For the purposes of distribution to creditors under the First Amended Plan, the Debtors will be considered a single legal entity. Furthermore, each of the Debtors and their respective estates will be substantively consolidated for the purposes of classification and distribution under the First Amended Plan pursuant to 11 U.S.C. § 1123(a)(5)(C), and all Allowed claims shall be treated on a *pari passu* basis. As a result, for such purposes, the common stock issued by the Debtors to any other Debtor, or held by any Debtor of any other Debtor shall be deemed cancelled and surrendered and all claims of any Debtor against another Debtor shall be deemed cancelled. The consolidated assets of each Debtor will be held by the Creditors' Trustee and available for distribution to all creditors regardless of which Debtor was responsible for the debt in the first instance.

In October 2002, prior to confirmation of the Plan, the Trustee commenced this adversary proceeding pursuant to 11 U.S.C. § 547 [3] seeking to recover allegedly prefer-

---

1. The order ("Confirmation Order") confirming the First Amended Liquidating Plan was signed and entered on January 28, 2003.

2. The Debtors are Century Electronics Manufacturing, Inc. ("Century"); Century Electronics Manufacturing (NE), Inc.; Amitek Corporation ("Amitek"); and Century Electronics Manufacturing West Coast Operations, Inc.

3. Section 547 provides, in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

ential payments, aggregating to almost $900,000, made by Debtors Century and Amitek to the Defendant. In its original answer, also filed before entry of the Confirmation Order, the Defendant asserted as one of its affirmative defenses that it had given new value to the Debtors.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (F), and (O).

## POSITION OF THE PARTIES

Because of the Confirmation Order's provision substantively consolidating the estates, the Defendant alleges that the total amount of its new value defense should be calculated based upon the new value it delivered to any of the Debtors during the preference period. To permit the Trustee to attack the transfers made by each Debtor individually undermines the *res judicata* effect of the Confirmation Order according to the Defendant. The Defendant acknowledges that there are two lines of cases regarding the retroactive effect of substantive consolidation orders. The Defendant urges the Court to reject *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp., Inc.)*, 810 F.2d 270, 277–278 (D.C.Cir.1987) and its progeny, and specifically *Schwinn Plan Committee v. AFS Cycle & Co. (In re Schwinn Bicycle Co.)*, 205 B.R. 557 (Bankr.N.D.Ill.1997) (holding that the substantive consolidation of the

estates did not permit a consolidated new value defense) in favor of the line of cases represented by *First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Services, Inc.)*, 974 F.2d 712 (6th Cir.1992), and *Evans Temple Church of God in Christ & Community Ctr., Inc. v. Carnegie Body Co. (Matter of Evans Temple Church of God in Christ & Community Ctr., Inc.)*, 55 B.R. 976 (Bankr. N.D.Ohio 1986). The Defendant argues that under the latter line of cases, an order substantively consolidating estates requires that creditors of all consolidated estates be treated as creditors of a single entity for preference purposes. Thus, the Defendant reasons, it must be accorded the right to assert all new value given to any of the Debtors as a defense in this action.

The Trustee objects to aggregating all new value into a single consolidated defense and argues it would give retroactive effect to the substantive consolidation provision of the Confirmation Order, an intent he states is contrary to the plain language of the confirmation Order and at odds with the case law regarding *nunc pro tunc* consolidation orders. He urges the court to adopt the holding of *Schwinn Bicycle*, the only cited case to deal with the precise issue now before this Court.

## DISCUSSION

■ Consolidation is permitted only if it is first established that the related debtors' assets and liabilities are so in-

---

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange. . . .

tertwined that it would be impossible, or financially prohibitive, to disentangle their affairs. The trustee may request consolidation to conserve for creditors the monies which otherwise would be expended in prolonged efforts to disentangle the related debtors' affairs. Nevertheless, the bankruptcy court must balance the potential benefits of consolidation against any potential harm to interested parties.

*Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.),* 954 F.2d 1, 12 (1st Cir.1992).

■ "Substantive consolidation merges the assets and liabilities of the debtor entities into a unitary debtor estate." *Id.* When the unity comes into existence, however, is the subject of contradictory approaches. One approach, represented by *Evans Temple,* is frequently cited as standing for the proposition that an order of substantive consolidation itself is sufficient to trigger the use of the earliest petition date (if the consolidated debtors did not all file bankruptcy on the same day) as the date from which the preference period should be calculated. The second approach, represented by *Auto–Train,* adds a second layer of analysis, namely whether the benefits derived from retroactive application of a consolidation order outweigh the harms caused by the *nunc pro tunc* application.

*The Evans Temple line of cases*

In *Evans Temple,* two related debtors filed bankruptcy approximately four months apart. A month after the second debtor filed its petition, the two estates were substantively consolidated. When the second debtor sought to recover an allegedly preferential transfer, the defendant responded that the transfer occurred more than 90 days prior to the filing of that debtor's petition. In analyzing the effect of substantive consolidation upon the computation of the preference period, the court began by addressing the use and effect of substantive consolidation.

Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors. *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2d Cir.1966); *In re Snider Bros., Inc.,* 18 B.R. 230 (Bankr. D.Mass.1982). In any consolidated case, there is implicit in the Court's decision to consolidate the conclusion that the practical necessity of consolidation to protect the possible realization of any recovery for the majority of the unsecured creditors far outweighs the prospective harm to any particular creditor. *See generally In re Snider Bros., Inc., supra.*

Thus, when a case is substantively consolidated, the Order for consolidation is, in effect, a determination by the Court that consolidation is warranted by the circumstances of the cases and that it is in the best interest of unsecured creditors to join the assets and liabilities of two debtors. It is, in effect, a statement by the Court that the assets and liabilities of one debtor are substantially the same assets and liabilities of the second debtor, or that the two are hopelessly intertwined, and that the unsecured creditors of both debtors would best be protected by pooling the assets and liabilities of the two debtors.

*Evans Temple,* 55 B.R. at 981–82.

Then turning to the policies behind section 547, the court noted that the section had two purposes: to discourage a race to the courthouse to acquire a debtor's assets and to promote equality of distribution

among all of the debtor's creditors. Therefore the court concluded that ensuring equality of distribution among creditors of debtors whose assets and liabilities are so intertwined that they are in reality only one estate requires that creditors of consolidated debtors be treated "in substantially the same manner," including sharing the earlier filing date for the calculation of the preference period. *Id.* at 982. Importantly the *Evans Temple* court noted that under the facts of the case, the result was not "manifestly unfair" to the creditor who, at least in its pleadings, did not distinguish between the two debtors.

In *Baker & Getty Fin. Servs.*, the Sixth Circuit Court of Appeals adopted *Evans Temple.*

> We decline to adopt the analysis of *Auto–Train,* without conceding that the use of that rule would make any difference in the ultimate outcome in this case. We believe that the *Evans Temple* rule is sounder, and makes for more certain administration of the Bankruptcy Code. As *Auto–Train* itself noted, the inquiry it proposed will "closely parallel" the inquiry already conducted in ordering consolidation. It would add needless confusion to allow relitigation of this question in the guise of litigation over the filing date, particularly when the outcomes will almost always be the same. The order of consolidation rests on the foundation that the assets of all of the consolidated parties are substantially the same. Therefore, the earliest filing date is the controlling date, and all transfers are to be analyzed as of that date.

*Baker & Getty Fin. Servs.*, 974 F.2d at 720–21.

The court also noted that the creditor treated the debtors as one. Thus, as in *Evans Temple,* the court noted that it was not unfair to use the earlier filing date as the start of the look-back period.

Subsequently in *Bonham v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir. 2000), the Ninth Circuit addressed *nunc pro tunc* consolidation. After concluding that there was "no principled need to apply the layered analysis set forth in *Auto–Train,*" the court adopted the Sixth Circuit's reasoning in *Baker & Getty Financial Servs. Id.* at 770. Yet the court went on to caution that not all substantive consolidation orders should be given retroactive effect.

> [W]e leave it to the discretion of the bankruptcy court to determine in light of the equitable nature of substantive consolidation whether *nunc pro tunc* consolidation should be ordered. However, the cautionary principles which apply to orders of substantive consolidation must be considered with particular care before a court orders *nunc pro tunc* consolidation: the power should be sparingly used and must be tailored to meet the needs of each particular case.

*The Auto–Train line of cases*

In *Auto–Train,* a case that also dealt with the impact of substantive consolidation on the determination of the petition date, the Court of Appeals for the D.C. Circuit reversed the bankruptcy court's retroactive application of a substantive consolidation order. The appellate court assumed that, after a balancing of the equities, substantive consolidation was appropriate but held that a second balancing of equities had to occur before such an order could be given retroactive effect.

> It appears to us that a bankruptcy court must undertake an additional and slightly different balancing process before using its equitable *nunc pro tunc* powers to give a consolidation order retroactive effect. Here the problem is the impact

of a rule exposing possible preference recipients to the risk of unpredictable shifts in the date that determines the legitimacy of transfers. Although the Bankruptcy Code clearly compels certain transferees to restore to their debtor property received within 90 days of the date their debtor files a petition in bankruptcy, it would thwart the Code's policies to require transferees to disgorge solely on the basis of a bankruptcy filing by their debtor's apparently distinct affiliate.

\*     \*     \*     \*     \*     \*

Were bankruptcy courts permitted to consolidate entities *nunc pro tunc* without regard to transferees' reliance on an entity's apparent separateness, a sign of weakness in any member of a family of corporations would lead creditors to descend on each member, strong or weak, to claim their pound of flesh. Such a rule would also sharpen people's natural reluctance to extend credit to any affiliate of a financially troubled corporation. This in turn would imperil the ability of financially sound affiliates to continue operations and help the more troubled ones out of their predicament.

*Auto–Train*, 810 F.2d at 276.

Unlike other courts which have reviewed the *Evans Temple* and *Auto–Train* decisions, the *Auto–Train* court did not view its holding as inconsistent with *Evans Temple*. Instead the *Auto–Train* court recognized that the *Evans Temple* court expressly noted in its decision that the creditor did not distinguish between the debtors and that giving *nunc pro tunc* effect to the consolidation order was not "manifestly unfair."

In *Post–Confirmation Committee of Unsecured Creditors of GC Companies, Inc. v. Walton (In re GC Companies, Inc.),* 298 B.R. 226 (D.Del.2003), the district court affirmed the bankruptcy court's re-fusal to grant substantive consolidation *nunc pro tunc* as requested by the debtor and the post-confirmation committee. After concluding that ordering consolidation *nunc pro tunc* would harm the United States Trustee by depriving him of quarterly distributions, the bankruptcy court refused the *nunc pro tunc* request. On appeal, the district court expressly refused to adopt the *Evans Temple* approach because the Third Circuit has yet to address this issue. Moreover, it gave at least tacit approval to *Auto–Train*. Although the district court recognized that the bankruptcy court did not expressly apply the *Auto–Train* approach, it recognized that the bankruptcy court applied a balancing test applicable to any *nunc pro tunc* request. *See also Matter of New Center Hospital,* 187 B.R. 560, 572 (E.D.Mich. 1995) (finding entry of substantive consolidation *nunc pro tunc* was an abuse of discretion because bankruptcy court did not make a determination that retroactive effect would achieve a benefit or avoid a harm).

In *Saccurato v. Shawmut Bank N.A. (In re Mars Stores, Inc.),* 150 B.R. 869 (Bankr.D.Mass.1993), the sole reported Massachusetts decision dealing with *nunc pro tunc* consolidation orders, the defendant sought summary judgment on preference counts on the grounds that the transfers occurred outside of the lookback period. In his opposition, the trustee urged the court to give retroactive effect to the substantive consolidation order entered some two years earlier. After first determining that a party may raise the issue of the *nunc pro tunc* application to a substantive consolidation order in a later adversary proceeding. Judge Goodman applied the *Auto–Train* analysis. Because the plaintiff trustee demonstrated that consolidation *nunc pro tunc* would benefit the estate, the court refused

to grant the defendant's summary judgment motion on the preference counts. Quoting *Auto–Train*, the court stated that the defendant would have the burden at trial "to introduce evidence to prove that 'it relied upon the separate credit of one of the entities to be consolidated and that it will be harmed by the shift in filing dates.'" *Mars*, 150 B.R. at 880, quoting *Auto–Train*, 810 F.2d at 277.

### Schwinn Bicycle

In *Schwinn Bicycle* the bankruptcy court was confronted with the identical issue before this Court, namely whether, when estates have been substantively consolidated, a preference defendant may use the new value defense without regard to which debtor received the new value. In *Schwinn Bicycle* the estates were substantively consolidated; during a subsequent trial on the issue of the debtors' insolvency during the preference period,[4] the estate representative proved insolvency on a consolidated basis. At the individual defendant's preference trial, the defendant argued that the consolidation order and the estate representative's use of such order to prove insolvency on a consolidated basis mandated the use of a consolidated new value defense. The court rejected both arguments. First, it concluded that the estate representative was not judicially estopped from contesting the use of a consolidated new value defense. The court found nothing clearly inconsistent in the positions taken by the estate representative. The court concluded that because the Bankruptcy Code requires a balance sheet test to prove insolvency during the preference period, the representative had

to present the information on a consolidated basis to eliminate worthless intercompany transactions in order to determine the true value of the assets and liabilities. Moreover the court viewed the issue of solvency as separate from the question of which estate received new value from the defendant. The court viewed the latter inquiry as one dealing with the parties' past practices. Because the evidence demonstrated that each debtor and the defendant viewed the transactions as unrelated to the dealings of any other co-debtor, the court concluded that a consolidated new value defense was inappropriate.

Second, the court rejected that argument that the consolidation order must be given retroactive effect. The court believed that the language of the consolidation order[5] was prospective only. There was no factual finding in the consolidation order that the debtors constituted a single entity.

### The Motion in Limine

■ The Motion *in Limine* requests that the Court now determine that the Confirmation Order must be given retroactive effect that extends back to at least 90 days before the Petition Date. The Court declines to do so for several reasons. First the Court believes that *Evans Temple* does not stand for the sweeping proposition that a consolidation order, without more, must always be given such retroactive effect. As Judge Goodman noted in *Mars Stores*, the *Evans Temple* court did not view its own decision as inconsistent with the earlier *Auto–Train* case. This Court agrees. The "split" between the two lines of cases barely qualifies as such. As the *Baker* court noted, using one ap-

---

**4.** Because the issue of solvency was common to all of the preference actions, the court held a separate trial, designated as the "Common Issues trial," on this issue before proceeding with the merits on individual preference claims.

**5.** The consolidation order expressly provided: "From and after the date of this order, all claims against the Debtors shall be treated as claims against the substantively consolidated estate."

proach over the other will often have no impact under the specific facts of a case. Even the *Bonham* court, which eschewed *Auto–Train* in favor of the *Evans Temple* rule, cautioned that retroactive consolidation orders should be used sparingly and tailored to the specific facts of a case.

■ Moreover the Defendant's argument that the confirmation order provides for retroactive substantive consolidation is incorrect. The language is forward-looking. It was intended for ease of administration, not as an opportunity for the Defendant to enlarge its new value defense after the fact. It would be unfair to burden the consolidated estate with a *nunc pro tunc* application that was not contemplated when the Confirmation Order entered.

■ The approach taken by Judge Goodman, namely that the party seeking retroactive application will have the opportunity to rebut evidence that credit was extended to the debtor entities on an individual basis, is the correct one to be taken in this case such as this. Therefore the Court adopts this approach. The Defendant may introduce evidence at trial to show that it dealt with the Debtors as a single entity during the preference period. The Court cautions, however, that, in the future, parties should address the issue of retroactivity when requesting substantive consolidation. If they intend substantive consolidation to have retroactive application, they should expressly request it and the order should specifically include such a provision.

## CONCLUSION

For the foregoing reasons, the Motion *in Limine* is denied.

A separate order will issue.