In the Matter of MARIN AVIATION, INC., A New Jersey Corporation, Debtor.

NATIONAL COMMUNITY BANK OF NEW JERSEY, a banking corporation, Plaintiff,

v.

MARIN AVIATION, INC., Engelhard Distributors Corporation, a corporation of the State of New York, Montello Oil Corporation, a New Jersey corporation, and Citizens First National Bank of New Jersey, Defendants.

In the Matter of MARIN MOTOR OIL, INC., a New York Corporation, Debtor.

NATIONAL COMMUNITY BANK OF NEW JERSEY, a banking corporation, Plaintiff,

v.

MARIN MOTOR OIL, INC., a New York corporation, Engelhard Distributors Corporation, a New York corporation, Montello Oil Corporation, a New Jersey corporation, and Citizens First National Bank of New Jersey, Defendants.

Bankruptcy No. 81–0364.

United States Bankruptcy Court, D. New Jersey.

April 27, 1984.

Kleinberg, Maroney, Masterson & Schacter, Millburn, N.J., for debtor.

Paul Hollander, Okin, Pressler, Cohen & Hollander, Fort Lee, N.J., for Nat. Community Bank of New Jersey.

Jack Zackin, Ravin, Greenberg & Zackin, Roseland, N.J., Trustee.

Gerald Gline, Cole, Schotz, Bernstein, Meisel & Forman, P.A., Rochelle Park, N.J., for Citizens First Nat. Bank of New Jersey.

## OPINION

D. JOSEPH DE VITO, Bankruptcy Judge.

On April 21, 1981 and May 5, 1981 respectively, Marin Motor Oil, Inc. (Motor Oil) and Marin Aviation, Inc. (Aviation) each filed petitions in bankruptcy under Chapter 11 of Title 11 of the U.S.Code.[1] The National Community Bank of New Jersey (Community Bank) commenced an adversary proceeding against each of the debtors, followed by a procedural consolidation. The Court now considers two motions arising in these consolidated proceedings—one, a motion to transfer the proceedings to the United States District Court; the other, the motion of Community Bank for summary judgment.

On April 27, 1981, Community Bank instituted the proceeding against Motor Oil, alleging in its complaint that it had a security interest in a helicopter owned by Motor Oil. In its prayer for relief Community Bank demanded judgment establishing the validity of the security interest and requested relief from the automatic stay provision of 11 U.S.C. § 362[a] and Bankruptcy Rule 11–44[a],[2] permitting it to foreclose on the security interest. On April 30, 1981, Community Bank amended its complaint to allege that Engelhard Distributors Corporation, now known as Phibro Distributors Corporation (Phibro), had instituted an action in the Superior Court of New Jersey against Motor Oil, in which it (Phibro) had obtained a writ of attachment on the helicopter. In its amended complaint Community Bank demanded release of the helicopter from Phibro's writ of attachment and a determination that Community Bank's security interest is superior to any interest Phibro might have.

On May 29, 1981, this Court, vacating the writ of attachment, authorized Community Bank to sell the helicopter, with the proceeds invested pending a determination of the rights of the parties to those proceeds. The helicopter was sold for $325,000.

On May 7, 1981, Community Bank instituted an adversary proceeding against the debtor Aviation, alleging a security interest in an airplane owned by Aviation. In its complaint Community Bank demands judgment establishing the validity of its security interest and requests relief from the automatic stay provisions of 11 U.S.C. § 362[a] to permit foreclosure on the secur-

---

1. The bankruptcy petitions reveal that the debtors are, in a business sense, closely related, with Nicholas Marin listed as the president of both. Nicholas Marin is also listed as the owner of all of Aviation's shares, with him and Ilse Marin each listed as owning one-half of Motor Oil's shares. The National Community Bank of New Jersey is listed as the only secured creditor of either debtor. The Aviation petition lists a security interest given to Community Bank in Aviation's only listed asset, an airplane, and states that the security interest was given to guarantee Motor Oil's debt of approximately $3,800,000.

2. The Bankruptcy Rules cited in this opinion have been superseded by new rules effective August 1, 1983, but as the motions under consideration predate August 1, 1983, the old rules are given full effect.

ity interest. Although Community Bank did not name Phibro as a defendant, Phibro submitted a brief relative to the motions considered here, stating therein that it had also attached the airplane. On May 12, 1982, the Court authorized Community Bank to sell the airplane and directed Community Bank to invest the proceeds pending a determination of the rights of the parties thereto. The airplane was sold for $1,600,000.

Upon a finding that the above noted complaints involved common issues of law and fact, the Court did, on July 15, 1981, procedurally consolidate the proceedings. The ensuing order directed that the complaints in each proceeding be served on Phibro, Montello Oil Corporation (Montello), and Citizens First National Bank of New Jersey (Citizens Bank). The order further provided that each of the above who filed responsive pleadings to both complaints by July 24, 1981 be granted leave to intervene in the consolidated proceedings. Montello and Citizens Bank filed answers to both complaints, and Phibro, having previously answered the Motor Oil complaint, filed an answer to the Aviation complaint.

Phibro, Montello, and Citizens Bank are all creditors of Motor Oil. Their interest in the Aviation proceeding stems from the contention that the airplane belongs to Motor Oil, rather than Aviation. They contend that the transfer of the security interest in both pieces of aircraft constitutes voidable preferences under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548, and assert that these contentions are for the benefit of the estate. The noted creditors also contend that Community Bank's security interests should be subordinated to the claims of the general creditors, and urge that they be found to be unenforceable by Community Bank pursuant to 11 U.S.C. § 510.

In separate cross-claims for fraud, the creditors allege that Community Bank intentionally supplied them with false information concerning Motor Oil's financial condition, and that they relied on that information in extending credit to Motor Oil to their detriment. Since these cross-claims are not subject to the motion for summary judgment, they are not now considered.

On June 1, 1983, Citizens Bank filed the motion to transfer these proceedings to the United States District Court, and Community Bank moved for summary judgment on its own claims. Phibro joins Citizens in its motion to transfer, and Montello appears to support that position. Community Bank opposes the motion to transfer. Phibro, Citizens, and Montello oppose the summary judgment motion. Neither the debtors nor the trustee of either estate takes a position on either of the motions.

Preliminarily, the Court addresses two procedural items relating to the motion for summary judgment—firstly, whether the Court may decide that motion.

■ The defendants argue that Rule 47 of the General Rules of the United States District Court for the District of New Jersey prohibits this Court's consideration of the summary judgment motion. Rule 47 is the emergency rule enacted in response to the United States Supreme Court's decision in *Northern Pipeline Construction Company v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The rule refers to the bankruptcy court those proceedings which the bankruptcy court would otherwise have heard pursuant to 28 U.S.C. § 1471. Subsection [c][1] of the rule states:

> The bankruptcy judges may perform in referred bankruptcy matters all acts and duties necessary for the handling of those matters and may conduct all proceedings except ... [c] jury trials.

The defendants, having demanded that these consolidated proceedings be tried by a jury, argue that by virtue of subsection [c][1] and their right to a jury trial, the consolidated proceedings must be tried by the District Court. Citizens Bank argues that it logically follows that any further proceedings in these matters, including consideration of the summary judgment motion, must necessarily be heard by the United States District Court. This argu-

ment assumes that the term "trial" refers not merely to that portion of a proceeding in which the parties present their evidence for evaluation by the trier of fact, but to all other areas of the proceeding as well. The term "trial" is commonly used to designate that step in an action whereat issues or questions of fact are decided, but may also signify an examination of matters of law as well. 75 Am.Jur.2d *Trials* § 1 (1974). There can be no question, however, that the issues of law are to be decided by the Court; *see Baltimore and Carolina Line, Inc. v. Redman,* 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). In a jury trial the factual issues are determined by the jury, with the ultimate verdict dependent upon the jury's application of relevant law as explained by the Court, to those factual findings.

The Court finds *King v. Fidelity National Bank,* 712 F.2d 188, 192 (5th Cir.1983), of particular applicability to this issue. In *King,* the Appellate Court, in considering the bankruptcy court's entry of the order for relief on the bank's motion for summary judgment and the plaintiff's contention that on that issue they were unconstitutionally denied their right to trial by jury, held that summary judgment is not unconstitutional and that, where there are no disputed issues of material fact for a jury to decide, no jury is necessary.

The argument of Citizens Bank also overlooks subsection B[2] of Rule 47, which provides for the withdrawal of the reference of a matter to the bankruptcy court upon the motion of the District Court or a party. Subsection B[2] states: "A motion for the withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court." This Court finds that it can decide the summary judgment motion.

■ The second procedural item to be considered, before moving to the merits of the summary judgment motion, is raised by Community Bank. The Bank challenges the defendant-creditors' standing to question the validity of its security interest as a preference or fraudulent transfer, arguing that the language of 11 U.S.C. § 547 and § 548 limits the availability of the avoidance authority provided under those sections to the trustee, specifically, that no one but the trustee has standing to set aside, for the benefit of the estate, transfers as preferences or fraudulent conveyances.

The Court rejects that argument. A creditor has standing to intervene in an adversary proceeding brought by a trustee; *Official Unsecured Creditors' Committee v. Michaels* (Matter of Marin Motor Oil, Inc.), 689 F.2d 445 (1982), wherein the Third Circuit, in interpreting 11 U.S.C. § 1109[b], granted to the creditors committee the unqualified right to intervene in an adversary proceeding instituted by the trustee. A reading of the Code and *Michaels, supra,* clearly signals that this right extends to individual creditors, including the right to participate in the general administrative aspects of cases and includes, further, the right to sue where a trustee or debtor in possession does not. *See Official Committee of Unsecured Creditors v. Hyman Corporation* (Matter of Joyanna Holitogs, Inc.), 21 B.R. 323, 326 (Bankr.S.D.N.Y.1982).[3]

For a variance of view, *see In re Phelmetta,* 7 B.R. 461 (Bankr.Conn.1980), wherein the court, at page 464, stated that "Code § 548 is an avoiding power available solely to the trustee and not to the creditors." However, the language of § 548, upon which Phelmetta relies, and of § 547 is not prohibitory. Absent a need to interpret it as such, there is no conflict between those sections and § 1109 on this point, and this Court finds that § 1109 confers standing upon creditors to invoke §§ 547 and 548 for the benefit of the estate.

Having ruled that this Court may consider the motion for summary judgment, we

---

**3.** The Third Circuit put its imprimatur on the *Joyanna Holitogs* holding in note 11 of *Michaels,* found at p. 456.

now consider the substance of that motion. The propriety of a summary judgment motion is governed by Rule 56 of the Federal Rules of Civil Procedure, which Bankruptcy Rule 756 makes applicable to adversary proceedings. Rule 56 provides:

> [a] ... A party seeking to recover upon a claim ... may ... move ... for a summary judgment in his favor upon all or any part thereof.... [c] ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.... [d] ... If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy ... and directing such further proceedings in the action as are just..

· ■ Examining separately the facts underlying Community Bank's Aviation and Motor Oil claims, it appears that, with respect to Marin Motor Oil, the parties do not appear to dispute the following facts:

1. Motor Oil signed a security agreement on November 3, 1980, which gives Community Bank's and Motor Oil's addresses;

2. the agreement purports to secure all past, present, and future liabilities of Motor Oil to Community Bank;

3. the agreement purports to transfer a security interest in the helicopter to Community Bank;

4. Motor Oil owned the helicopter on November 3, 1980;

5. Motor Oil had an outstanding debt to Community Bank on November 3, 1980;

6. Motor Oil's debt to Community Bank increased by $2,000,000 on March 10, 1981;

7. Community Bank recorded the security agreement with the Federal Aviation Administration on December 12, 1980.

By virtue of the first five listed facts, a security interest attached on November 3, 1980. N.J.S.A. 12A:9–203. By virtue of the attachment and the recording (fact seven), the security interest was perfected on December 12, 1980. N.J.S.A. 12A:9–302[4] and 49 U.S.C. § 1403.

■ Assuming arguendo the existence of a preference with regard to the transfer of the helicopter in the Motor Oil proceeding, fact number 6 prevents the avoidance of that preference from having any practical effect. Subsection [c] of § 547 states:

> The trustee may not avoid under this section a transfer ... [4] to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ....

The $2,000,000 transfer which took place on March 10, 1981 was new value under § 547[c][4]. Since the proceeds resulting from the sale of the helicopter were $325,000 and the security interest is not avoidable, at least to the extent of $2,000,000 under § 547, the estate benefits nothing from a showing that the transfer of the security interest was a preference.

■ Turning to whether the granting of the security interest in the helicopter was a fraudulent transfer under 11 U.S.C. § 548, the Court notes that, while the defendants do allege a fraud occurring in 1981, they do not allege that anyone engaged in any act in 1980 with the actual intent to hinder, delay, or defraud anyone else, or that Community Bank received less than an equivalent value in exchange for the security interest in the helicopter. Section 548[a] provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

█ made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

█[A] received less than a reasonably equivalent value in exchange for such transfer or obligation; and

[B][i] was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

[ii] was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

[iii] intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Subsection [d][1] of § 548 provides that:

For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee....

Since the security interest was perfected on December 12, 1980, allegations as to the occurrence of fraud in 1981 do not affect the creation of the security interest, and since the defendants do not allege that Community Bank received less than the reasonably equivalent value of the security interest, the defendants cannot avoid the transfer of the security interest in the helicopter as a fraudulent conveyance.

Moving now to equitable subordination, Community Bank argues that the propriety of exercising equitable subordination does not affect the Court's consideration of the underlying validity of its security interest. Assuming that to be so does not preclude the possibility of Community Bank's claims being subordinated to the claims of other creditors. Thus, although the Court has affirmed the validity of Community Bank's security interest in Motor Oil's helicopter, it does not now rule on the disposition of the proceeds of the helicopter.

█ Community Bank's Aviation claim is not ripe for summary judgment. The defendants contend that the transaction through which Aviation acquired title to the airplane constituted a fraudulent conveyance and that Motor Oil should have properly been considered its owner. They also contend that Community Bank was extremely knowledgeable about the affairs of both corporations. Until factual questions related to the underlying transaction are resolved, it is not useful to discuss the validity of actions whose effect depends on the validity of the underlying transaction as to Community Bank.

█ Moving now to the motion to transfer, Rule 47, upon which the defendants rely in their motion, mandates that this Court deny their request. Subsection B[2] states: "The reference to a bankruptcy judge may be withdrawn *by the district court* on its own motion or on timely motion by a party." (Emphasis added.) That language makes clear that the power to transfer a case pursuant to Rule 47 remains in the district court and is not referred by the rule to the bankruptcy court.

Submit an order in accordance with the above.