**In re BIG APPLE SCENIC STUDIO, INC., Debtor.**

**John S. PEREIRA, as Trustee in Bankruptcy of the Big Apple Scenic Studio, Inc., Plaintiff,**

**v.**

**Robert KAISER, Defendant.**

**Bankruptcy No. 81 B 10282.
Adv. No. 82–6285A.**

United States Bankruptcy Court, S.D. New York.

July 18, 1986.

Robert P. Herzog, New York City, for trustee.

Feinman, Greher & Cave by Warren Greher, Newburgh, N.Y., for defendant.

TINA L. BROZMAN, Bankruptcy Judge:

The trustee commenced this adversary proceeding against the principal of the debtor seeking recovery of the sums of $14,750.00, the fair market value of machinery and equipment allegedly transferred in violation of section 548 of the Bankruptcy Code, 11 U.S.C. § 548, ("Code") and $7,736.01, the amount of post-petition transfers allegedly made in violation of section 549 of the Code, plus interest. For the following reasons, judgment should be rendered in favor of the defendant.

## FACTS

The Big Apple Scenic Studio, Inc. ("Big Apple") was a manufacturer of theatrical scenery, maintaining its factory and office in Hoboken, New Jersey. Robert Kaiser ("Kaiser"), the president of Big Apple from its incorporation in June 1975, executed Big Apple's chapter 7 petition, filed on February 8, 1981. John S. Pereira was thereafter named trustee. The trustee commenced the adversary proceeding against Kaiser described above.[1] The case was tried on November 14 and 15, 1984,[2] with proposed findings of fact and conclusions of law being submitted in late December, 1985. At the conclusion of the trustee's case, the defendant moved to dismiss for failure to make out a *prima facie* case. Decision was reserved and the defendant rested.

Kaiser testified that shortly before the bankruptcy filing (about five days to two weeks), he communicated with auctioneers, Baldwin Industrial Liquidators, Inc. ("Bald-

---

1. The trustee's complaint contains four causes of action, the first two under section 548, the fraudulent transfer section, alleging absence of consideration and actual intent to hinder, delay or defraud, respectively, the third and fourth alleging violations of section 549 involving post-petition transfers.

2. The case was tried before the Honorable Edward J. Ryan. Upon his retirement, this case was reassigned. The parties have stipulated to waive a trial *de novo* allowing this court to render a decision based on the record before it.

win"), to obtain an appraisal of equipment which he was considering liquidating in an attempt to pay off creditors who were then obtaining executions. A Samuel Valenzisi ("Valenzisi") traveled to Big Apple's New Jersey factory, walked around, looked at the equipment and estimated it would bring between $32,000.00 and $40,000.00 at auction. Kaiser described Valenzisi's appraisal as an "eyeball perusal" because he had not been in the building more than seven minutes when he learned that there were existing executions and declined to handle the matter.

Valenzisi testified that upon later discovering Big Apple was in chapter 7, he contacted the trustee and expressed interest in re-examining the assets so to enable Baldwin to submit a formal proposal. Valenzisi made the re-examination and, in a letter dated February 19, 1981, Baldwin offered $15,250.00 for the machinery, equipment and furniture. He testified that the low offer was attributable to two factors: first, his learning that between $5,000.00 to $7,000.00 worth of the equipment was leased or liened and second, a "differential" in some of the items. As to the second factor, he testified that he could not state whether the items were different but merely that the numbers he added up on both trips came out different.[3] In any event, the trustee rejected the offer and instead through an auctioneer conducted an auction in March 1981 which yielded gross proceeds of $26,470.00.

Prior to the auction, the trustee communicated with Richard Van Wyck ("Van Wyck"), one of the debtor's former employees, who testified that he was employed "off and on" by Kaiser at Big Apple between 1977–80. His job entailed building and moving scenery which gave him familiarity with the equipment as well as with the repair and sometimes the purchase of the tools with which he worked. Although Van Wyck and Kaiser parted on friendly terms, Van Wyck testified there was "a little undercurrent of strain" as a result of some small money matters. The trustee requested Van Wyck to list that equipment which he recalled Kaiser had at the shop. Van Wyck prepared the requested list on March 1, 1981 basing it on what he remembered from the last time he had worked with all the tools, some seven or eight months before the bankruptcy case was commenced.[4] On March 5, 1981, he met the trustee at the Big Apple premises where he looked over the equipment and amended his list, noting as well equipment which he remembered but was no longer on the premises. Because Van Wyck's amended list contained more equipment than was at the premises, the trustee argues that Kaiser, as the sole stockholder and principal, must have fraudulently transferred some equipment before the filing. The cross examination of Van Wyck casts doubt on the inferences which the trustee would have us draw. Van Wyck admitted that he could not pinpoint when he last saw the equipment, that some of it could have been sold or perhaps broken and that he never saw Kaiser take any of it. Nor was Van Wyck sure who owned the equipment. While he believed some was purchased by Big Apple for its own account (he in fact purchased some), he was not positive of the ownership of particular items of equip-

---

**3.** Specifically, the testimony at trial went as follows:

Valenzisi: There was a differential in some of the items that were on the premises. I don't recall which.

The Court: All right.

Q: When you say a differential, you mean some were missing?

A: Well, all I can say is this. When I walked through with the gentleman that you had there opening the premises for me and I added up the numbers, they didn't come out to the same numbers anymore.

Q: As you had previously seen?

A: Previously seen and calculated.

The Court: But you don't recall what you had seen and what you calculated the first time as opposed to what you saw and calculated the second time, is that your testimony?

A: That's correct, your Honor.

Tr. at pp. 68–69.

**4.** While Van Wyck testified he subsequently had been in the shop, he did not at that time go through the tools and was clear that the list was created from his knowledge dating back to his last use of the tools. Tr. at 92.

ment. He further admitted that he knew that at least some tools on the premises were personally owned by Kaiser.

The facts surrounding the section 549 claim are undisputed. At the time Big Apple filed its petition, it maintained an account receivable from Caribiner, Inc. ("Caribiner"). The Caribiner debt was was paid to Big Apple post-petition, Kaiser depositing the money received in a Big Apple bank account which contained additional funds. He then wrote out twenty-four checks to various employees for payment of their respective vacation claims. These post-petition checks were issued without court approval and without the consent of the trustee.

## DISCUSSION

■ Turning first to the section 549 claim, although section 549 enables the trustee to avoid unauthorized post-petition transfers of property,[5] section 550 directs that the recovery be made from the transferee of the property. Specifically, section 550(a) reads as follows:[6]

> (a) except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549 or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> > (2) any immediate or mediate transferee of such initial transferee.

Cases under the former Bankruptcy Act, which had a provision similar to section 550, held consistently that the transferor is not the proper party to be held liable where a trustee is exercising his avoiding powers. *See e.g., Elliott v. Glushon,* 390 F.2d 514 (9th Cir.1967); *Klein v. Tabatchnick,* 459 F.Supp. 707, 718 (S.D.N.Y.1978) *aff'd in part, rev'd in part,* 610 F.2d 1043 (2d Cir.1979)(footnote 4 affirms relevant holding); *Robinson v. Watts Detective Agency, Inc.* 685 F.2d 729 (1st Cir.1982), *cert. denied* 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 436 (1983); *Star Sprinkler Corporation v. Jackson,* 575 F.2d 1223, 1234 (8th Cir.1978); *Gough v. Titus (In re Christian and Porter Aluminum Company),* 584 F.2d 326, 338–39 (9th Cir.1978); *Haux v. Gerson (In re Gerson),* 35 B.R. 129, 130 (Bankr. 9th Cir.); *see also Smyth v. Kaufman,* 114 F.2d 40, 43 (2d Cir.1940).

Such a holding recognized the very purpose of a trustee's avoiding powers which is to preserve estate assets rather than to render civilly liable those who have dissipated such assets.[7] *Elliot v. Glushon,* 390 F.2d at 516. The theme under the Act emerges in the Code through section 550. *See Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334 (Bankr. S.D.N.Y.1983); *Salomon v. Nedlloyd, Inc. (In re Black & Geddes, Inc.),* 59 B.R. 873 (Bankr.S.D.N.Y.1986). Accordingly, since Kaiser was only the transferor of the vacations checks, we hold that he cannot as a matter of law be held liable under section 549.

■ We next address the trustee's causes of action under section 548 where he seeks the fair market value of equipment he argues Kaiser fraudulently transferred from Big Apple. These actions too must fail. The evidence presented was speculative at best and the inferences the

---

**5.** With exceptions not herein relevant, 11 U.S.C. § 549 reads in part as follows:
  (a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—
   (1) that occurs after the commencement of the case; and
   (2)(A) that is authorized under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.
The Bankruptcy Amendments and Federal Judgeship Act of 1984, not applicable to this case, made minor changes to this portion of the statute which in any event would be of no import here.

**6.** Again, the Bankruptcy Amendments and Federal Judgeships Act of 1984, not applicable here, makes minor changes to this section.

**7.** That is not to say, however, that a dissipator may not be liable in damages under a state law tort theory.

trustee asks this court to draw would require us to ignore equally plausible explanations.

First, the trustee has not proven what equipment was located at the premises prior to the bankruptcy. Van Wyck's list was based on his memory of the equipment as of June 1980, about eight months prior to the commencement of the case and nine months prior to his creation of the list. Further, Van Wyck was uncertain as to the ownership of each individual piece of equipment, recognizing that Kaiser personally owned some of the items. Nor did Van Wyck ever see Kaiser take or learn that Kaiser had taken any equipment in the intervening months. Thus, from Van Wyck's testimony, we cannot determine what equipment was originally at the premises, who owned that equipment, whether transfers were ever effectuated, or to whom, whether the consideration was adequate or whether transfers were made with actual intent to hinder, delay or defraud. In short, Van Wyck's testimony proves little other than that his recollection of what was once present at the premises did not jibe with what the trustee found.

Nor does Valenzisi's testimony carry the day for the trustee. There was no testimony that the equipment which was first appraised was all owned by Big Apple. That Baldwin's offer of $15,250.00 was significantly lower than the original appraisal, $32,000–$40,000, does not necessarily lead to the conclusion that Big Apple equipment was fraudulently transferred. Valenzisi testified that the difference between the appraisal offer was due in part to his discovery that some $5,000.00 to $7,000.00 worth of items were liened or leased. Subtracting that $7,000.00 from the lowest valuation of his first appraisal, $32,000, results in a number less than that which the auction ultimately yielded, $26,470.00. That Baldwin subsequently *offered* to buy the equipment which it had earlier *appraised* for a price far below the appraisal amount is not terribly probative of the trustee's contention; Valenzisi may simply have seen an opportunity to acquire the equipment from the trustee at a bargain price. Far more compelling is the price actually obtained at auction. Valenzisi's testimony that the amounts he calculated for the value of the equipment differed on the two occasions is similarly unpersuasive both because he could not testify that any equipment was actually missing, but also because his motive in attributing value on the second visit was to obtain the equipment at the best possible price.

Whether we cast our conclusion in terms of resolving the defendant's motion to dismiss or reviewing and weighing the evidence as a whole, it is clear that the trustee has failed to meet his burden as he is required to do under section 548. *See* L. King, 4 *Collier on Bankruptcy* ¶ 548.10 (15th ed 1985) and cases cited therein. The cumulative testimony and exhibits do not reveal that a transfer even occurred, let alone that Kaiser was the transferee as is required under section 550, or that the transfer was made without adequate consideration or with actual intent to hinder, delay or defraud. At best, there is the mere possibility that Kaiser spirited away equipment belonging not to him, but to the estate. Equally plausible explanations could include that Van Wyck's recollection was faulty, that some equipment belonged to Kaiser personally, that some equipment was removed by someone other than Kaiser or that some equipment was discarded or sold.

Thus the relief sought under sections 548 and 549 is denied.

SETTLE ORDER FOR JUDGMENT.