In re **UNITED STAIRS CORPORATION,**
Debtor.

**John F. BRACAGLIA, Chapter 7 Trustee for United Stairs Corporation and First Fidelity Bank, N.A., Plaintiffs,**

v.

Louis **MANZO, Excel Cabinet Corporation, Spiral Leasing Corporation, Lisa Manzo, Stacia Manzo, Mary DiNonno, Dorothy Davis and Diana Manzo, Defendants.**

**Bankruptcy No. 92–31066.**
**Adv. No. 92–3137TG.**

United States Bankruptcy Court,
D. New Jersey.

Jan. 11, 1995.

Joseph Lubertazzi, McCarter & English, Newark, NJ, for plaintiff First Fidelity Bank, N.A.

John Bracaglia, Jr., Trustee, Cohn & Bracaglia, Somerville, NJ.

Peter R. Silverman, Silverman, Collura, Chernis, P.C., New York City, for defendants.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### INTRODUCTION

This action was commenced by the filing of an Adversary Complaint and an Order to Show Cause by the Chapter 7 trustee, John Bracaglia, and by First Fidelity Bank, N.A. ("First Fidelity"), an undersecured creditor of debtor. The complaint seeks various types of relief including the voiding of fraudulent transfers and the substantive extension and consolidation of the debtor's case with certain non-debtor corporate defendants. This court held a trial on the return of the Order to Show Cause.

This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H) and (O).

### FACTS

The debtor was engaged in the business of manufacturing and selling staircases. On September 12, 1986 and October 19, 1990 First Fidelity loaned the debtor $1,500,000 and $794,458.39 respectively. The debtor ultimately defaulted on these obligations. First Fidelity brought suit, by Order to Show Cause and Verified Complaint filed on May 6, 1991, in the Superior Court of New Jersey, Chancery Division, Middlesex County, seeking foreclosure of its mortgages. The Order to Show Cause was heard on May 8, 1991. On May 16, 1991, the Superior Court entered an order temporarily restraining debtor from transferring its assets. These restraints were continued by an order dated May 31, 1991 and remained in effect until the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 18, 1992.

One month prior to the filing of the Superior Court Complaint, and two weeks after First Fidelity had sent a demand letter to debtor, defendant Excel Cabinet Corporation ("Excel") was incorporated. The President of Excel is defendant Lisa Manzo, the daughter of Louis Manzo, the President and sole shareholder of the debtor. Excel is engaged in the business of manufacturing and selling wooden cabinets. On May 7, 1991, the day before the return of the Order to Show Cause, the debtor transferred title to certain property to Excel for the consideration of $1.00. Debtor also transferred inventory and accounts to Excel. Additionally, the evidence shows that debtor transferred equipment to defendant Spiral Leasing Corporation ("Spiral"). The President of Spiral is Diana Manzo, the sister of Louis Manzo. After May 7, 1991, the debtor essentially ceased operations and Excel occupied the premises. It should be noted that while there are some differences in the machinery or equipment used by Excel, both operations involve the construction of large wooden objects. Excel acquired some machinery apparently incompatible with stair making but the general process appears to be similar.[1] On May 1, 1991, Spiral leased the equipment transferred from debtor to Excel.

On February 4, 1992 the Superior Court entered an order appointing a custodial receiver for debtor and on February 18, 1992 entered an order extending the custodial receiver a statutory receiver. It extended the restraints imposed on debtor to defendants Excel, Spiral, Lisa Manzo, Stacia Manzo, Louis Manzo, Mary DiNonno and Dorothy Anne Davis. On February 18, 1992 the debtor filed its Chapter 7 petition.

The within adversary complaint was filed by the trustee and First Fidelity on March 12, 1992 and an Order to Show Cause with the temporary restraints set forth above was entered by this Court on March 13, 1992. The trial began on April 5, 1992 and shortly thereafter the parties began settlement negotiations. While the trial was ongoing, the trustee and Spiral reached a settlement.

---

1. At the request of the parties, the court visited the premises in question in the presence of representatives of all parties and made the observations set forth herein. While a great effort was made to emphasize differences in the machinery, it is clear that the uses are compatible and that the changeover from stairs to cabinets was, for the most part, a trivial one.

The trustee submitted the proposed settlement to the Court and First Fidelity responded with objections to the settlement. On October 29, 1992, the Court held a conference in connection with the objections.

During the conference with the Court, the parties agreed that the settlement between the trustee and debtor would not affect First Fidelity's right to proceed in the adversary proceeding. This fact is relevant to Spiral's motion to dismiss based on the settlement agreement. Spiral argues that it was not the intention of the parties that First Fidelity be able to proceed after the settlement. In the alternative, Spiral argues that even if it was the intention of the parties for the suit to continue with First Fidelity as sole plaintiff, First Fidelity has no legal standing to pursue Spiral as First Fidelity is not the trustee and is merely an individual creditor.

Defendant Spiral conducted depositions of debtor's former attorney, Charles Mandell, and First Fidelity's attorney, Joseph Lubertazzi in connection with its argument that it was not the intention of the parties that First Fidelity be able to continue its suit after the settlement between the trustee and Spiral. Those depositions were submitted to this court along with a letter dated November 22, 1994 in which Spiral argues that the depositions support its position and specifically that Charles Mandell expressed this intention to the parties. The court has reviewed the depositions and finds that the arguments made to the court by both parties, at the time of the settlement, demonstrate that the parties intended First Fidelity would proceed with the adversary proceeding.

Spiral quotes Mr. Mandell out of context in arguing its position. Spiral argues that Mr. Mandell understood the intention of the parties to be that First Fidelity would not be able to proceed against Spiral after the settlement between Spiral and the trustee. The depositions actually reveal that Mr. Mandell at first could not remember his own intentions, but then explained his belief that the settlement transferred the trustee's claims to Spiral, thus precluding First Fidelity from asserting the trustee's claims on behalf of the estate. (Deposition of Charles Mandell, Oc-

tober 17, 1994, at 15–16.) Mr. Mandell admitted that he did not express his thoughts either to the court or to First Fidelity. (Deposition of Mandell at 16–17.) Assuming arguendo that Mr. Mandell indeed believed the parties intended that the settlement would preclude First Fidelity from proceeding, the actions and statements of Mr. Mandell and all other parties were in conflict with this alleged intention. It is the factual finding of this court that the settlement agreement between the trustee and Spiral was not intended to foreclose First Fidelity's rights against Spiral. Whether First Fidelity has a legal right to pursue its claims is an issue that will be discussed below.

During the testimony of Diana Manzo it became clear that Spiral was merely an instrumentality for United Stairs and that Louis Manzo, acting on behalf of United Stairs, and not Diane Manzo, was in control of Spiral's business. Diana Manzo testified that Spiral existed merely to service United Stairs and later Excel. United Stairs provided the purchase money for Spiral to commence its operations. This "loan" and later "loans" were never repaid. Diana Manzo was unable to point to any repayment terms for these loans. Spiral shares office space with United Stairs. It does not pay rent nor does it pay utility bills. Testimony demonstrated that there were numerous transfers of assets without formalities. It is clear that Spiral had no existence independent from United Stairs.

The same is true with respect to Excel. Testimony demonstrated that Excel essentially took over United Stairs operations and purchased the Keyport Property (the location of the United Stairs business) for the consideration of $1.00. Excel's employees were the former employees of United Stairs. Excel's president, Lisa Manzo, actually had no idea how these employees were paid. It is clear that Lisa Manzo was merely a figurehead for her father, Louis Manzo, operating as United Stairs, and that Excel was merely an extension of United Stairs.

First Fidelity seeks to recover property transferred to the corporate defendants, arguing that these transfers were "fraudulent

transfers" under 11 U.S.C. § 548. Alternatively, First Fidelity argues that the assets of Spiral and Excel should be substantively consolidated with the debtor's case. Consolidation would moot the need for recovery of fraudulent transfers made to these two corporate entities. Spiral moves to dismiss the adversary proceeding arguing that First Fidelity, an individual creditor of debtor, has no standing to seek recovery of a fraudulent transfer or to move for extension and substantive consolidation. In response to Spiral's motion to dismiss, First Fidelity argues that Spiral is collaterally estopped from arguing lack of standing.

For the reasons articulated below, Spiral's Motion to Dismiss is denied. With respect to the merits of the claim for substantive consolidation, the court finds that Excel and Spiral are alter egos of the debtor and the court will order the extension of the bankruptcy case to include the assets of Spiral and Excel.

## DISCUSSION

### Collateral Estoppel

■ On June 29, 1992 this Court denied defendant Excel's motion to dismiss First Fidelity for lack of standing. First Fidelity argues that the Court's ruling in the Excel motion is the law of the case and Spiral is collaterally estopped from raising the same issue. Plaintiffs Brief in Opposition, at 16; *see also Matter of Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991) (holding in relevant part that the doctrine of law of the case dictates that when a court decides a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation). Spiral argues that the settlement agreement between the trustee and Spiral is binding and in effect avoids directly responding to First Fidelity's law of the case argument. *See* Spiral's Memorandum in Reply to Opposition of First Fidelity, July 12, 1994.

What neither party addresses is that the factual status of the adversary proceeding was different at the time of the Excel motion. The Excel motion was heard *prior* to the settlement. At that time First Fidelity *and* the trustee were plaintiffs in the adversary proceeding against Spiral. Excel argues in

its papers that the action was "brought by First Fidelity and that the trustee . . . [was] . . . merely a nominal party in the case." Excel's Application in Support of Motion to Dismiss, par. 9. The Court at the Hearing of June 29, 1992 ruled that the trustee was still a party and further that First Fidelity had independent standing to bring the action and denied the motion to dismiss.

The Supreme Court has held that when a court "has decided an issue of fact or law *necessary to its judgment*, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (emphasis added); *see also* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 4416 & 4421 (1981). In the motion to dismiss brought by Excel, the bankruptcy court found that the trustee was still a party to the case and that First Fidelity could join in the motion to benefit the estate. The court's finding that First Fidelity had independent standing was dicta and was not necessary to the decision to deny Excel's motion.

Additionally, United States Supreme Court has removed the mutuality requirement for collateral estoppel in *Blonder–Tongue Laboratories, Inc. v. University*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The Court now recognizes a general limitation that the "concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen*, 449 U.S. at 95, 101 S.Ct. at 415; *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In the instant case, First Fidelity seeks to assert the ruling in its favor against Spiral which was not a party to the motion made by Excel.

Collateral estoppel is not applicable as the court's decision in the Excel motion was not necessary to its ruling on the motion and Spiral has not had an opportunity to litigate this issue. This court will therefore address the merits of Spiral's Motion to Dismiss for lack of standing.

*Spiral's Motion to Dismiss*

■ Spiral argues that First Fidelity has no standing to seek recovery of fraudulent transfers or to move for consolidation. Spiral asserts that an individual creditor cannot invoke the trustee's powers.

As mentioned above, the trustee entered into a settlement with defendant Spiral waiving the trustee's right to pursue recovery of the alleged fraudulent transfers to Spiral. Consequently, with respect to defendant Spiral, the settlement between the trustee and Spiral left First Fidelity as the sole plaintiff in the adversary proceeding.

The Bankruptcy Code does not specifically address the right of an individual creditor to pursue a claim on the estate's behalf in a Chapter 7 case. In a Chapter 11 case "any party in interest, including … a creditor … may appear and be heard on any issue in any case under this chapter." 11 U.S.C. 1109(b). There is no comparable provision under Chapter 7. Additionally, as the Third Circuit cases discussed below demonstrate, the courts of this jurisdiction have not specifically addressed this issue.

In *Official Unsecured Creditors' Committee v. Michaels (In the Matter of Marin Motor Oil)*, 689 F.2d 445, 450 (3rd Cir.1982) the Third Circuit held that in a Chapter 11 case a creditors' committee has the right to intervene in an adversary proceeding pursuant to 11 U.S.C. 1109(b). *Id.* at 453. The *Michaels* court granted the creditors' committee's motion to intervene in the adversary proceeding brought by the trustee to, among other things, substantively consolidate non-debtors with the debtor's case. An additional issue resolved by the court was that § 1109 mandated intervention by creditors and that the court did not have discretion to deny intervention.

The Third Circuit also noted that "Congress intended a creditors' committee to have more extensive rights in a reorganization than in a liquidation." *Id.* at 450. One reading of this statement is that in contrast to a Chapter 11 creditor, a Chapter 7 creditor does not have standing to involve itself as a plaintiff seeking to consolidate non-debtors. However, another reading is that in a Chap-

ter 11 case creditors may intervene as of right as opposed to a Chapter 7 case where the decision is left to the discretion of the court. It is not clear from the context of the quoted statement which reading reflects the intention of the court. Additionally, as this was a Chapter 11 case, the statement is *dicta*.

In a more recent opinion, *In re McKeesport Steel Castings Company*, 799 F.2d 91 (3rd Cir.1986), the Third Circuit held that the general rule "that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach." *Id.* at 94. That case involved a gas company's motion for payment from the debtor for service pursuant to 11 U.S.C. § 506(c). This section of the code clearly provides that the *"trustee* may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of such property." 11 U.S.C. § 506(c) (emphasis added). Despite the fact that § 506(c) seems to give the power to recover expenses only to the trustee, the Third Circuit found that equity requires the court to allow a creditor to bring an action when the trustee does not. *Id.* This holding must be read in connection with two other factors. First, the *McKeesport* case was brought under Chapter 11. Since the Court does not mention the general right to be heard under 11 U.S.C. 1109(b), it is not clear whether the holding was meant to be applicable only to Chapter 11 cases or to Chapter 7 cases as well. Secondly, the Court considered as an important factor that the plaintiff "was the only creditor that would zealously pursue [the] claim" and "neither the debtor in possession nor a creditors' committee had reason to make the claim on behalf of [plaintiff]." *Id.* In contrast, in the instant case the trustee did have reason to bring the adversary proceeding, which it did, but chose to settle the claims against Spiral.

While *McKeesport* provides some authority for the Court to invoke its equitable powers, it is not clear whether the holding is applicable to the instant case. *Michaels* arguably supports a contrary finding, but again the Third Circuit did not specifically address a chapter 7 case involving an individual credi-

tor. Since there is no controlling decision on the particular issue presented by the instant case, this case must be treated as one of first impression in this jurisdiction.

In the majority of cases dealing with substantive consolidation the movant is the trustee or the debtor in possession. *See Kroh Brothers Development Co. v. Kroh Brothers Management Co.*, 117 B.R. 499 (W.D.Mo.1989); *see also Murphy v. Stop & Go Shops, Inc. (In re Stop & Go of America)*, 49 B.R. 743 (Bankr.D.Mass.1985). It is the rare case that presents the issue of an individual creditor seeking to consolidate the assets of non-debtors into the debtor's estate.

In the case of *In re Snider Bros., Inc.*, 18 B.R. 230 (Bankr.D.Mass.1982), the court considered a motion brought by the creditors' committee to consolidate six debtor corporations which had filed under chapter 11. While the court denied the relief finding that the equities were not in favor of consolidation, the court did not question the committee's right to bring such an action. The court in *Snider* recognized that a creditors' committee can bring such an action, and given the appropriate facts a court may grant substantive consolidation.

There are two courts which have held, based solely on equitable principles, that an individual creditor may pursue a substantive consolidation. In *In re Tito Castro Construction, Inc.*, 14 B.R. 569 (Bankr.D.P.R. 1981), the Court held that "[a]ny party in interest may request that the Bankruptcy Court effectuate a consolidation." *Id.* at 571.

Judge Whelan of the District Court of the District of Columbia held that when entities sought to be consolidated with the debtor are alter egos of the debtor, individual creditors have the right to bring those entities before the Court even though the creditors may not have had the power to force an involuntary petition on such non-debtor entities. *In re 1438 Meridian Place, N.W., Inc.*, 15 B.R. 89, 96 (Bankr.D.D.C.1981). The facts of the *In re 1438 Meridian Place* parallel those of the instant case wherein the nondebtor entities, Spiral and Excel, are alter egos of United Stairs. *See* discussion *infra* at 367–68, *Extension and Substantive Consolidation.*

As discussed above, the Third Circuit has held that where "sufficient reason exists" individual creditors may act in lieu of the trustee. *McKeesport*, 799 F.2d at 94. The rationale of the *1438 Meridian Place* holding is consistent with the *McKeesport* holding; where alter egos are sought to be consolidated with the debtor "sufficient reason exists" to allow First Fidelity to act in lieu of the trustee. Judge Whelan's view is persuasive and requires the holding that the equitable powers of § 105 allow the court to hear an application for substantive consolidation by an individual creditor.

Many courts have held that the right to substantive consolidation is a qualified right; i.e., the creditor must demonstrate that the actions of the trustee in *not* pursuing that right were unjustifiable or abusive of his discretion. *See Society Bank, N.A. v. Sinder*, 102 B.R. 978, 983 (Bankr.S.D.Ohio 1989). In *Society Bank*, the court held that a creditors' committee could bring an action to recover a preference only if (1) the committee asked the debtor-in-possession to pursue the claim and the request was refused and (2) the debtor-in-possession abused its discretion in so refusing. *Id.* at 983.

The two-part qualification set forth in *Society Bank* is inapplicable to the instant case for two reasons. First, in this case there was no need for First Fidelity to make such a request with respect to Excel, because, in fact, the trustee is still a plaintiff in the action against Excel. Hence, the first element is not applicable to Excel.

With respect to Spiral, there was no *per se* request to pursue Spiral. However, at the time of the settlement, First Fidelity objected to the settlement and clearly stated its intention to continue to pursue Spiral. First Fidelity's objections to the settlement were in fact a request to the trustee to pursue its claims against Spiral. The insistence upon the settlement by the trustee was tantamount to a denial. While the second element is applicable to Spiral, it has been satisfied.

Second, the requirement that the trustee or debtor-in-possession abuse his/her discretion before the court interferes is not

applicable to either corporate defendant. The rationale for the requirement is that the court should not interfere with the trustee's right to use his/her discretion to pursue some claims and settle others. *See Belisle v. Anzivino (In re Plunkett)*, 128 B.R. 460, 461 (Bankr.E.D.Wis.1991) (regarding trustee's strong arm power pursuant to 11 U.S.C. § 544); *Washington Mutual Savings Bank v. James (In re Brooks)*, 79 B.R. 479, 480 (9th Cir. BAP 1987) (regarding trustee's avoidance power under 11 U.S.C. § 549); *see also* 11 U.S.C. §§ 544, 547, 548 and 549 (all providing that the trustee "may" avoid certain transfers of property). In this case, the parties intended that First Fidelity be able to pursue an action against Spiral after the settlement and the trustee has not objected to First Fidelity's actions in continuing the proceeding against Spiral. Consequently, there is no danger of the court usurping the trustee's discretion and it is unnecessary to determine whether the trustee's settlement with Spiral, when viewed in hindsight, was an abuse of discretion in this case. Finally, it should be noted that First Fidelity has an allowed secured claim and as the holder of such, is not represented by the trustee.

■ This court finds that First Fidelity, as an individual creditor, has standing to bring an action for substantive consolidation against the non-debtor entity, Spiral. Spiral's motion to dismiss is therefore denied.

■ With respect to the other defendants, the trustee is still a plaintiff in the case. No defendant has made a motion to dismiss the trustee nor has the trustee sought a voluntary dismissal. The trustee is therefore still a party to this case and co-plaintiff with First Fidelity as to all parties except Spiral.

*Extension and Substantive Consolidation*

■ While the Bankruptcy Code does not specifically address the court's power to substantively consolidate, courts have held that the power is authorized under 11 U.S.C. § 105(a). *See, e.g., In re Hemingway Transport*, 954 F.2d 1 (1st Cir.1992); *Eastgroup Properties v. Southern Motel Assoc.*, 935 F.2d 245 (11th Cir.1991); *In re Augie/Restivo Baking Company*, 860 F.2d 515 (2nd Cir.

1988). Pursuant to § 105 the bankruptcy court is granted equitable powers to carry out the provisions of the Bankruptcy Code and to prevent abuses of process. *See* 11 U.S.C. § 105(a). It is well established that in the appropriate circumstances the court may substantively consolidate corporate entities thereby "merg[ing] the assets and the liabilities of two or more estates, creating a common fund of assets and a single body of creditors." *In re John Cooper*, 147 B.R. 678, 682 (Bankr.D.N.J.1992); *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 837 (Bankr. C.D.Cal.1988), *aff'd* 949 F.2d 1058 (9th Cir. 1991).

■ While many consolidation cases involve the consolidation of entities already in bankruptcy, it is accepted that a non-debtor entity may be consolidated with a debtor under appropriate circumstances. *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941); *see also In re 1438 Meridian Place, N.W., Inc.*, 15 B.R. 89 (Bankr.D.D.C.1981); and *In re Crabtree*, 39 B.R. 718 (Bankr.E.D.Tenn. 1984). In *Sampsell* the Supreme Court found that substantive consolidation of a non-debtor corporation with the individual bankrupt's estate was proper where the transfer of property to the non-debtor corporation was not in good faith but was made for the purpose of placing it beyond the reach of the original debtor's creditors, and where the effect of the transfers was to hinder, delay or defraud the individual's creditors. *Id.* 373 U.S. at 218–19, 61 S.Ct. at 906–07; *see also* Patrick C. Sargent, *Bankruptcy Remote Finance Subsidiaries: The Substantive Consolidation Issue*, 44 Bus.Law 1223, 1233–36 (1989) (discussing the consolidation of debtor subsidiaries).

■ Consolidation, of course, is a power that should be used sparingly. *Snider Bros.*, 18 B.R. at 234. This power is not an "instrument of procedural convenience, but a measure vitally affecting substantive rights." *Id.* *See Matter of Flora Mir Candy Corp.*, 432 F.2d 1060, 1062 (2nd Cir.1970); *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2nd Cir.1966). Substantive consolidation should be considered with extreme

caution and granted only in extraordinary situations. *In re Lease–A–Fleet, Inc. v. Robins Le–Cocq, Inc.,* 141 B.R. 869, 872–73 (Bankr.E.D.Pa.1992).

■ While this court is mindful of the seriousness of the remedy of consolidation, this is a case where extraordinary circumstances exist and an examination of the equities requires extension and substantive consolidation. Where the debtor and non-debtor entities are alter egos of each other extraordinary circumstances are present. *Lease–A–Fleet,* 141 B.R. at 872–73. In this case, no one but Louis Manzo, acting as president of United Stairs, had any knowledge of the operations of the various businesses. Manzo treated each of them as an instrumentality; using raw materials, employees, physical space, telephone and even stationary as needed regardless of the corporate niceties. Similar to the debtor's actions in *Sampsell,* the transfers of property to Spiral and Excel were not in good faith but were made for the purpose of placing United Stairs' assets beyond the reach of its creditors. *Sampsell,* 313 U.S. at 218–19, 61 S.Ct. at 906–07.

■ A number of bankruptcy courts have established a multi-element test for determining whether substantive consolidation is appropriate. *See, e.g., In re Augie/Restivo Baking Company,* 84 B.R. 315, 321 (Bankr. E.D.N.Y.1988); *Pension Benefit Guaranty Corp. v. Quimet Corp.,* 711 F.2d 1085, 1093 (1st Cir.1983), *cert. denied,* 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983); *see also* Baker Ostrin, *A Proposal to Limit the Availability of Substantive Consolidation of Solvent Entities with Bankrupt Affiliates,* 91 Com.L.J. 351, 354–58 (1986) (setting forth the different multi-element tests for consolidation and arguing for the limitation of the substantive consolidation of solvent entities). No specific elements have been applied in the district of New Jersey and while such tests may be helpful in some analyses this court adopts the ultimate test of balancing of the equities. In doing so, the court must weigh the economic prejudice of continued debtor separateness against the economic prejudice of substantive consolidation. *In re Cooper,* 147 B.R. 678, 682 (Bankr.D.N.J.1992); *In re Snider Bros., Inc.,* 18 B.R. 230, 234 (Bankr.

D.Mass.1982). This determination must be *sui generis.* *In re Augie/Restivo,* 84 B.R. at 321, *quoting* 5 Collier on Bankruptcy, ¶ 1100.06, p. 1100–33 (15th Ed.1985).

Creditors would be severely prejudiced if Excel and Spiral were to remain as entities separate from debtor. Louis Manzo has attempted to circumvent liabilities incurred by United Stairs while continuing his business in the form of Excel and transferring assets to Excel and Spiral. United Stairs is, as a result, a debtor with very few assets and its creditors have a slim chance of any recovery. Without consolidation, the following claims would most likely remain unpaid: tax claims of approximately $400,000, trade claims of approximately $400,000 and bank claims in excess of $2,500,000.

On the other hand, consolidation will cause little or no economic prejudice to creditors. Diana Manzo has testified that Spiral has only one creditor, a bank with a secured claim on one of Spiral's vehicles. The trade creditors of Excel are essentially the same as the trade creditors of United Stairs. In this case consolidation would yield "an equitable treatment of creditors without undue prejudice to any particular group." *In re Richton International Corp.,* 12 B.R. 555, 558 (Bankr. S.D.N.Y.1981).

This court finds that plaintiffs have met their burden of proving that Excel is the alter ego and Spiral the instrumentality of United Stairs. The balancing of equities makes it proper and necessary to treat debtor, Excel and Spiral as one entity in this proceeding. *In re Continental Vending Machine Corp.,* 517 F.2d 997, 1000 (2d Cir.1975). *Involuntary Bankruptcy of Non–Debtor Entities*

■ Defendants argue that the court cannot impose consolidation without a finding that plaintiffs have met the requirements of involuntary bankruptcy as to the defendants. *See* 11 U.S.C. 303(b). For the reasons articulated below, § 303 is not applicable to these plaintiffs.

■ An entity which is the alter ego of a debtor is not entitled to the safeguards to which a true independent non-debtor

would be entitled. *In re 1438 Meridian Place*, 15 B.R. at 95–96 (holding that the debtor corporation's creditors, who could not comply with § 303(b) with respect to the non-debtors affiliates because the creditors did not have a claim against the affiliates directly, nonetheless could bring them before the court where such affiliates were alleged to be the alter egos of the debtor). Where the non-debtor entities are alter-egos of the debtor, the creditors have the right to move for extension and consolidation independent from the right to force those entities into bankruptcy pursuant to 11 U.S.C. § 303. *In re Crabtree*, 39 B.R. 718, 722 & n. 1 (Bankr. E.D.Tenn.1984).

Not all courts accept the argument that § 303(b) need not be satisfied in a substantive consolidation case. In *In re Alpha & Omega Realty*, 36 B.R. 416 (Bankr.D.Idaho 1984), the court declined to follow *1438 Meridian* and held that a nondebtor could not be declared an involuntary debtor through a consolidation motion and that either an adversary proceeding or involuntary petition under § 303 with their attendant protections was required. *Alpha & Omega*, 36 B.R. at 417. The facts of the instant case are distinguishable as the *Alpha & Omega* court specifically found that the nondebtor entities in that case were *not* alter egos of the debtor. *Id.* Indeed, the *Alpha & Omega* court notes this same distinction between its case and the *1438 Meridian* case. *Id.*

The legal question of whether the procedural safeguards of § 303 are required, like the question of whether substantive consolidation is proper in the first place, is dependent on the equities of the case at hand. *Crabtree* 39 B.R. at 722; *In re Miller*, 262 F.Supp. 298, 300 (E.D.Ill.1967). As discussed above, the continued independence of Spiral and Excel would be a greater hardship on the creditors than the consolidation with debtor. Similarly, no prejudice results to the creditors by virtue of allowing First Fidelity to amend the caption in this bankruptcy case rather than requiring them to file a new separate petition against Spiral and Excel. *Crabtree* 39 B.R. at 722; *In re Miller*, 262 F.Supp. at 300. If Spiral and Excel have any defenses, they can raise them as well in the consolidated case as they could have in an independent proceeding. *Crabtree* 39 B.R. at 722; *In re Miller*, 262 F.Supp. at 300. If they have no defenses, then it would have been an unnecessary expense to the creditors to bring an entirely new bankruptcy proceeding. *Crabtree*, 39 B.R. at 722; *In re Miller*, 262 F.Supp. at 300; *see also Meridian*, 15 B.R. at 97–98 (no prejudice to creditors).

As this is a case involving alter egos where the non-debtor entities are not entitled to procedural safeguards and creditors will not be harmed by the lack of these protections, the court need not address the requirements of § 303(b) to order substantive consolidation. For the reasons stated above, debtor's estate shall be substantively consolidated with non-debtors Excel and Spiral.

*Fraudulent Transfers, Fraud and Conversion*

Since the court has ordered the substantive consolidation of debtor, Spiral and Excel, the counts of the complaint requesting recovery of fraudulent transfers from these entities are moot. Counts I, II, V, VI, VII and VII need not be addressed by the court. In addition, Counts XI and XII are also moot as they request turnover of property from Spiral and/or Excel and payment for use and occupancy of the debtor's property from Spiral and/or Excel.

As to Count XIV of the Complaint, Conspiracy to Defraud, this court finds in favor of defendants because plaintiffs have not proven the requisite elements of fraud. The elements of common law fraud in New Jersey consists of the following elements: knowing misrepresentations by defendants as to a material fact, defendants' intention to induce plaintiffs to rely on that misrepresentation, reliance by plaintiff on that misrepresentation and resulting damage to plaintiff. *Gutman v. Howard Savings Bank*, 748 F.Supp. 254 (D.N.J.1990); *see also Agathos v. Starlite Motel*, 977 F.2d 1500 (3rd Cir.1992); *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 577 A.2d 143 (1990).

The court need not address each of these elements as it is clear that the last element, proof of damages, cannot be demonstrated. Plaintiffs were able to demonstrate that

there was a scheme to defraud creditors through a transfer of assets from United Stairs to Spiral and Excel. While there were additional allegations of fraud resulting in the transfer of debtor property to the individual defendants, the proofs at trial were insufficient. The harm that was caused by the transfer of assets to Spiral and Excel will be remedied by the substantive consolidation of these entities with the debtor's estate. Hence, the court finds in favor of defendants on Count XIV of the complaint.

Plaintiffs allege in Counts IX and X that fraudulent transfers were made to Stacia Manzo. The specific allegations developed at trial with respect to Stacia Manzo personally were that she attempted to receive security interests in assets of United Stairs and that a portion of the residential property of Louis Manzo was transferred to her from him. With respect to the security interest, Stacia Manzo did not execute a security agreement and the proof at trial was insufficient to prove that funds are due and owing to her. The security interest is invalid, N.J.S.A. 12A:9-203(1)(b); *In re Marin Aviation, Inc.*, 53 B.R. 497, 501 (Bankr. D.N.J.1984), and consequently the fraudulent transfer claim in Count IX is moot with respect to the alleged security agreement.

With respect to Count X, the transfer of the personal residence of Louis Manzo to Stacia Manzo is outside the jurisdiction of the bankruptcy court. In fact, the Superior Court, Chancery Division, has already set aside the transfer as a fraudulent conveyance under state law. *Midlantic National Bank v. Manzo*, No. F-5890-91, letter op. at 21 (N.J.Super.Ct.Ch.Div. Sept. 15, 1993). While there has been no motion to dismiss, without jurisdiction, the court must dismiss this count *sua sponte.*

Plaintiffs allege in Counts III and IV that fraudulent transfers were made to Lisa Manzo. Specifically, plaintiffs allege that accounts receivable of United Stairs were deposited into the personal bank account of Lisa Manzo. Lisa Manzo admits that this occurred but claims that in each instance she transferred these funds from her personal account to the business account of Excel. Plaintiffs have failed to offer proofs to dispute Ms. Manzo's claim.

The burden of proof with respect to a claim of fraudulent transfer under 11 U.S.C. § 548 is on the trustee. *Pereira v. Kaiser (In re Big Apple Scenic Studio, Inc.)*, 63 B.R. 85, 89 (Bankr.S.D.N.Y.1986); *McColley v. Jacobs (In re North American Dealer Group, Inc.)*, 62 B.R. 423, 428-29 (Bankr. E.D.N.Y.1986). The plaintiffs have failed to meet this burden. While plaintiffs have demonstrated, through admissions, that some checks were deposited into Lisa Manzo's personal account, there is no specific proof as to the amount or identification of the checks. Therefore, judgment is entered in favor of defendant and against plaintiffs on Counts III and IV of the Complaint.

Plaintiffs have alleged, in Count XV, conversion of debtor property by Spiral, Excel and the individual defendants. The proofs at trial demonstrated that certain accounts receivable and inventory were transferred from United Stairs to Excel and Spiral through the actions of the individual defendants. Plaintiffs did not prove, however, that the debtor's assets were converted for the use of the individual defendants. With respect to the corporate defendants this count is moot as a result of the consolidation. As to the individual defendants, judgment is entered in favor of defendants due to plaintiffs failure to provide sufficient proofs.

## CONCLUSION

Defendant Spiral's motion to dismiss is denied. Judgment is entered in favor of plaintiffs on Count XIII of the Complaint and accordingly the estates of Spiral and Excel will be substantively consolidated with debtor's estate. Counts I, II, V, VI, VII, VIII, IX, XI and XII are moot. Counts XIV and XV are moot as to the corporate defendants and judgment is entered in favor of the individual defendants. Judgment is entered in favor of defendants on Counts III and IV. Count X is dismissed with prejudice.